### SNIVELY v FETTY et

Ohio Appeals, 9th Dist, Summit Co

No 2848. Decided May 18, 1937

Willis Bacon, Akron, for appellant.
Rees, Genovese & Bliss, Akron, for appellees.

ROSS, PJ, HAMILTON and MATTHEWS, JJ, (1st Dist) sitting by designation.

### OPINION

By HAMILTON, J.

This law suit grows out of the raising of a pool or a fund for the purpose of drilling a well for oil on certain described property located in West Virginia.

It appears from the record that Fetty, one of the appellees, promoted the proposition, and had suggested the matter to Snively, the appellant. On receipt of a letter from Snively, Fetty called upon him and presented the proposition. Snively was favorably impressed, but withheld signing a contract for subscription to shares at the time, desiring to further consider the matter. Fetty left and left a form for a wire to himself at a designated place, if Snively should conclude to go in. Snively concluded to go into the proposition and sent the wire to Fetty, who thereupon called upon Snively, who took an interest of $1,000 and signed a detailed contract of the project, and gave his check for $1,000. The full detailed contract is in the record.

It was provided that the money should be deposited in a bank in the name of Fetty, trustee, to be paid out by checks countersigned by the trustees, of which Snively was one, and the money was to be used for the sinking of the well.

The contract and payment by Snively were made on the 6th of April, 1935. On the 20th of April, Fetty entered into a contract with a driller for the drilling of the well, at a specified price per foot. At or about this time Snively met Fetty, and they went to the bank to sign signature cards for the cosigners for the benefit of the bank, so that the bank might be familiar therewith on the withdrawals of the money.

At this time nothing was said by Snively against the going through with the deal. Two days later, he, together with his wife, came to Akron and made demand upon Fetty for the return of their money, he having become dissatisfied with the deal. At the time they were told by Fetty he would be glad to return the money, but that he had already signed the drilling contract for which this specific money was pledged.

Snively made no demand or move at this time to rescind the contract. He did not notify the bank to withhold the money, or notify the drilling contractor that he was withdrawing. He did nothing further about the matter until the filing of this suit, which was on the 10th day of June, 1935.

The action to rescind the contract and recover the money was set up, allegations of misrepresentation and fraud were al-

leged in procuring the contract and the payment of $1,000.

The contractor proceeded with the wo.k of digging the well, and completed it to the point where it was apparent there was no oil. This was approximately 1900 feet in depth. It then appeared that the well was a nonproducer and the project was abandoned.

Plaintiff has failed in his proof to establish any ground of fraud or misrepresentation to his damage, except one statement which Snively claims Fetty made to him when he procured him to sign the contract; that was that certain influential men in Akron were already in the deal. He claims that when the names of these men were mentioned to him, as being in the deal, he was influenced thereby. Fetty denies that he told Snively they were in, but that they promised to come in, and claims that was as far as he went. Snively admits he knew none of the men mentioned except one lawyer, whose reputation as a reputable lawyer he had knowledge of.

Fetty's contract with Snively was carried out to the letter, and plaintiff does not claim any failure. The money subscribed was for a specific purpose, the sinking of the well, which was done. Snively said Fetty told him the sinking of the well would cost about $4,000. The best that can be gathered from the evidence is that it cost approximately $3,000, which was substantially the amount of money raised by Fetty.

While some of the men that Snively claims Fetty told him had come in did not come in, Fetty raised the money from other sources sufficient to drill the well. There was no guarantee of any kind the well would be a producing well. They were all gambling on a producing well.

The rule of law is that, to make fraud actionable, it is essential that the plaintiff shall have suffered injury. He must have been damaged or misled to his hurt. If fraud has been perpetrated, and damage has ensued, that makes a case. Proof of material injury is essential in an action of deceit. **19 O. Jur., Fraud and Deceit, §116,** and cases there cited.

Now how was Snively damaged, even if we do find that Fetty told him that certain men were already in the deal, which is denied by Fetty? We see no reason to give Snively greater credit as a witness than Fetty, and it might be said that Snively failed to sustain the preponder-ance of the evidence under these circumstances. However that may be, Snively must show that the statement of Fetty, as to the men that had already come in, misled him and resulted in material injury to him, before he can recover.

The proposition is that Snively knew they were raising funds for a pool to dig this well That was the essential thing, the construction and digging of the well. Had the well been a producer, no doubt we would never have heard of this case, and Snively would have been considered a very shrewd, good business man. Fetty gave him everything he contracted for: an interest in the well to be constructed, with no guarantee as to the result.

Snively suggested at one place in his own testimony that what he was interested in was knowledge that enough money was available to insure the completion of the well.

Enough has been stated from the record and the evidence to show the plaintiff has failed to establish by a preponderance of the evidence such fraud as would vitiate the contract, and entitle him to the return of the money paid in.

A decree may be presented dismissing the action.

ROSS, PJ, and MATTHEWS, J, concur.